In re NEPTUNE WORLD WIDE
MOVING, INC., Debtor.

NEPTUNE WORLD WIDE MOVING,
INC., Plaintiff,

v.

SCHNEIDER MOVING & STORAGE
COMPANY and Burnham Service
Corporation, Defendants.

Bankruptcy No. 85 B 20213.
No. 88 Adv. 6111.

United States Bankruptcy Court,
S.D. New York.

March 19, 1990.

As Amended March 27, 1990.

Angel & Frankel, P.C., New York City, for debtor.

Ravin, Sarasohn, Cook, Baumgarten, Fisch & Baime, Roseland, N.J., for defendants.

## DECISION ON DEFENDANT'S MOTION TO DISMISS ADVERSARY PROCEEDING

HOWARD SCHWARTZBERG, Bankruptcy Judge.

The defendants, Schneider Moving & Storage Company ("Schneider") and Burnham Service Corporation ("Burnham") have moved for an order dismissing the complaint and amended complaint in this adversary proceeding filed by Neptune World Wide Moving, Inc. ("Neptune"), a confirmed former Chapter 11 debtor. The defendants' motion for dismissal recites that this court lacks jurisdiction of the plaintiff's adversary proceeding and that the complaint fails to state a cause of action upon which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(1) and (6), as adopted by Bankruptcy Rule 7012(b).

### Chronology of Events

Neptune is a common carrier and a contract carrier by motor vehicle, engaged in the transportation of household goods and is authorized by a certificate issued by the Interstate Commerce Commission to use the public highways between all points in the United States, except Alaska and Hawaii. Both Schneider and Burnham engaged in business as contract carriers of household goods, but neither was authorized to engage in moving merchandise on an interstate basis.

On June 17, 1975, Neptune and Schneider entered into an Agency Agreement whereby Schneider was authorized to use Neptune's interstate license to ship goods in interstate commerce as an agent for Neptune. Pursuant to the Agency Agreement, Schneider's drivers were authorized to collect all monies due from customers for services rendered by Schneider while using Neptune's interstate license. Schneider was required to obtain Neptune's approval before Schneider could perform any moves as Neptune's agent, which approval was confirmed by Neptune's issuance of a bill of lading number to Schneider. After Schneider completed a move it would receive payment from Neptune based on a percentage of the gross revenue generated by the move depending upon the type of services performed by Schneider. Thus, if Schneider did not collect directly from the customers, Neptune would collect the amounts due under its invoices and would remit the proportionate amount due Schneider. Each party would account to the other for the amounts due with respect to previous moves under the Agency Agreement.

In February, 1985, Burnham purchased Schneider's business, at which time Schneider ceased to operate and Burnham succeeded to Schneider's rights and obligations under the Agency Agreement with Neptune.

On April 30, 1985, Neptune filed with this court a petition for relief under Chapter 11 of the Bankruptcy Code and continued in operation of its business and proper-

ty as a debtor in possession in accordance with 11 U.S.C. §§ 1107 and 1108.

On August 26, 1985, Burnham, as the successor to Schneider, filed a proof of claim in the sum of $453,317.96 for moneys due Schneider and Burnham under the Agency Agreement. Thereafter, the defendants, Schneider and Burnham, voluntarily reduced their claim to $383,429.33, which was further reduced on consent following Neptune's motion to expunge the claim to the sum of $373,989.89.

On January 16, 1987, Neptune filed a plan of reorganization and a disclosure statement. Burnham, as successor to Schneider, served on the Creditors' Committee, which had been selected by the United States trustee on May 14, 1985. Burnham/Schneider was one of the largest unsecured claimholders in this case. The negotiated plan of reorganization provided for a payment to unsecured claims of 23% of their allowed amount.

By order of this court, dated March 4, 1987, the Disclosure Statement which Neptune submitted pursuant to 11 U.S.C. § 1125 was approved. On pages 19–20 of the Disclosure Statement, Neptune declared:

> The Company [Debtor] has analyzed the costs and benefits attributable to potential recoveries of preferences or fraudulent transfers and has concluded that such recoveries would not provide a meaningful avenue of recovery for it or its creditors. *Accordingly, the Company [Debtor] has elected to forego collection of such payments made prior to the filing date* (Emphasis added).

At no time prior to Neptune's obtaining the defendants consent to its plan of reorganization, or prior to this court's order approving confirmation of the plan, did Neptune object to the Schneider/Burnham proof of claim or advise its creditors that Neptune had any claims for the recovery of preferential or fraudulent transfers made prior to the filing date of its Chapter 11 petition. Accordingly, in voting approval of the plan, the creditors had no reason to believe that the debtors would seek to recover for preferences or fraudulent trans-

fers which might enhance the debtor's estate and augment the fixed 23% distribution that the unsecured claimholders agreed to receive under Neptune's Chapter 11 plan of reorganization.

On July 1, 1987, Neptune's Plan of Reorganization was confirmed by order of this court which was entered on that day. The confirmation order states in relevant part as follows:

> Except with respect to late Claims, the Debtor shall, within ninety (90) days from the date hereof, file any and all objections to the allowance of any Claim or interest to which objection has not heretofore been made, and shall bring on for hearing such objections and any other pending objection as promptly as practicable. In the event of the failure of the debtor to make any objection to the allowance of any Claims or interests prior to or within said 90–day period, such objection shall be deemed waived, unless the period of time to file such objection is extended by further order of this court.

Neptune's plan of reorganization, which was confirmed on July 1, 1987, provides that the bankruptcy court retains jurisdiction for certain limited purposes with respect to the consummation and implementation of the plan, including the determination of all disputed claims. This retention of limited jurisdiction, which is expressed in Section 12 of the plan, provides in relevant part as follows:

> This Court hereby retains jurisdiction for purposes provided in the Plan and for such purposes as may be necessary to aid in the confirmation, consummation and implementation of the Plan including:
>
> (a) determination of any and all disputed claims;
>
> \* \* \* \* \* \*
>
> (e) allowance, disallowance, estimation, liquidation or determination of any Claim or Claims against the Debtor and entry or enforcement of any order requiring the filing of such Claim or Claims before a particular date;
>
> \* \* \* \* \* \*

(g) enforcement, if needed, of any and all provisions of the Plan; and

(h) for such other purposes as permitted under the Bankruptcy Code.

On October 6, 1987, Neptune timely filed with this court a motion to expunge the Burnham/Schneider claim entirely because Schneider allegedly failed to comply with the Agency Agreement. Neptune charged Schneider with duplicative billing, unrecorded setoffs and unrecorded agency payments. In essence, Neptune claimed that Schneider failed to account for shipments made and funds received by Schneider which should have been credited to Neptune under the Agency Agreement.

A determination of Neptune's objection to the Schneider/Burnham claim was delayed while the parties engaged in extensive discovery procedures.

In the Fall of 1988, during the course of discovery with respect to Neptune's objection to the Schneider/Burnham claim for shipping and moving services performed under the Agency Agreement, Neptune alleges that it uncovered bills of lading, invoices, cash receipts, bank deposit slips and other documents which the defendants maintained under the Agency Agreement reflecting prepetition interstate moves in which the defendants utilized Neptune's bills of lading without its consent or altered Neptune's bills of lading by replacing its pre-printed name with that of the defendants.

Neptune claims that it did not know when it objected to their claim, and was prevented from learning, of their asserted conversion of Neptune assets because of the defendants' allegedly fraudulent concealment. Accordingly, Neptune concluded that not only were the defendants not entitled to support their claim under the Agency Agreement, but that Neptune was entitled to an affirmative award in the sum of $590,137.00 for conversion, breach of fiduciary duty under the Agency Agreement, and preferential transfers.

Instead of filing a counterclaim for affirmative relief in addition to its objection to the defendants' claim, Neptune commenced a post-confirmation separate adver-

sary proceeding in this court against the defendants on Novernber 17, 1988. Neptune's adversary proceeding was initiated more than 16 months after this court's order of confirmation, which was entered on July 1, 1987, and more than 13 months after Neptune had objected to the defendants' proof of claim.

In May of 1989, Neptune proceeded with its trial in this court in support of its objection to the defendants' proof of claim under the Agency Agreement. Pursuant to a decision dated May 11, 1989, this court ruled that Neptune had sustained its objection to the extent of $46,899.11 and that Schneider established its claim to the extent of $327,-110.78. *In re Neptune World Wide Moving, Inc.*, 99 B.R. 584 (Bankr.S.D.N.Y. 1989). An order was then entered on May 22, 1989, allowing Schneider's claim in the amount of $327,110.78.

Substantial consummation of Neptune's Chapter 11 plan has occurred within the meaning of 11 U.S.C. § 1101(2) in that Neptune has been revested with all of the property dealt with under the confirmed plan of reorganization and the unsecured creditors, except the defendants, have received 23% of the allowed amount of their claims.

On February 6, 1990, Neptune obtained leave from this court to amend its adversary complaint against the defendants to assert causes of action for post-petition transfers and punitive damages.

By Notice of Motion dated February 8, 1990, the defendants moved to dismiss Neptune's post-confirmation and post-consummation adversary complaint for lack of jurisdiction and failure to state a claim upon which relief can be granted in accordance with Fed.R.Civ.P. 12(b)(1) and (6) and Bankruptcy Rule 7012(b).

### *Estoppel*

 Before addressing the extent of the court's post-confirmation jurisdiction, provided for in the order of confirmation and in Neptune's Chapter 11 plan of reorganization, consideration must be given to Neptune's conduct with respect to its pre-

confirmation disclosure statement. The defendants argue that Neptune is precluded from pursuing recovery causes of action against them because Neptune's disclosure statement makes a clear, affirmative statement that there were no claims worth attempting to recover and that it elected to forego collection of potential preferences or fraudulent transfers because there were no meaningful avenues of recovery for it or its creditors. The defendants argue that Neptune should not be allowed to play fast and loose with the court and its creditors who relied on the disclosure statement and accepted a 23% fixed payment in the belief that Neptune would not thereafter seek a windfall for itself. This position is rooted in the doctrine of judicial estoppel, which is distinct from equitable estoppel and looks to the connection between the litigant and the judicial system, whereas equitable estoppel focuses on the relationship between the parties. *Oneida Motor Freight Inc. v. United Jersey Bank*, 848 F.2d 414, 419 (3rd Cir.1988), *cert. denied*, — U.S. —, 109 S.Ct. 495, 102 L.Ed.2d 532 (1988); *Hoffman v. First National Bank of Akron, Iowa*, 99 B.R. 929 (N.D.Iowa 1989); *In re Galerie Des Monnaies of Geneva, Ltd.*, 62 B.R. 224 (S.D.N.Y.1986); *In re Caro Area Services For the Handicapped*, 53 B.R. 438 (Bankr. E.D.Mich.1985). This line of cases holds that disclosure statements in the course of voluntary reorganizations are critical to the decisions of creditors to accept or reject proposed plans and that debtors may not take positions inconsistent with their statements in disclosure statements after the creditors have accepted the terms of the proposed plans. The doctrine of judicial estoppel is invoked to protect the integrity of the judicial process by preventing debtors from violating their special duty of candid disclosure. In all of the foregoing cases, the debtors knew before confirmation, or had reason to believe, that they had causes of action which were not revealed in the disclosure statement, or which should have been revealed by amendment after the debtors learned of the causes of action. *See e.g. In re Galerie Des Monnaies of Geneva, Ltd.*, 55 B.R. 253, 259 (Bankr.S.D. N.Y.1985), *aff'd*, 62 B.R. 224 (S.D.N.Y.1986)

(debtor did not seek to amend the disclosure statement and bring an adversary proceeding for the recovery of preferential transfers until after confirmation of its Chapter 11 plan although it readily admitted knowing about the transfers before confirmation).

Judicial estoppel is a doctrine intended to prevent the perversion of the judicial process. *Edwards v. Aetna Life Inc. Co.*, 690 F.2d 595, 599 (6th Cir.1982). It is to be applied where "intentional self-contradiction is being used as a means of obtaining unfair advantage in a forum designed for suitors seeking justice," *Scarano v. Central R. Co.*, 203 F.2d 510, 513 (3d Cir.1953), to prevent litigants from "playing fast and loose with the courts." *Id.* "Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position." *Davis v. Wakelee*, 156 U.S. 680, 689, 15 S.Ct. 555, 558, 39 L.Ed. 578 (1895).

*In re Cassidy*, 892 F.2d 637, 641 (7th Cir. 1990).

■ Neither judicial estoppel nor equitable estoppel will apply in those cases where a debtor's disclosure statement and plan reveal that the debtor contemplated commencing post-confirmation recovery actions. *In re Tennessee Wheel & Rubber Co.*, 64 B.R. 721 (Bankr.M.D.Tenn.1986), *aff'd*, 75 B.R. 1 (M.D.Tenn.1987); *In re J.E. Jennings, Inc.*, 46 B.R. 167 (Bankr.E.D.Pa. 1985).

■ In the instant case, Neptune maintains that the defendants concealed and altered documents which prevented Neptune from learning about potential recoveries under their Agency Agreement until after confirmation of its Chapter 11 plan. Neptune argues that it could not reveal in its disclosure statement that it possessed potential causes of action against Neptune because the documents and facts supporting its adversary proceeding were concealed by the defendants. Accordingly, Neptune contends that the defendants' acts to conceal these facts prevented it from

learning about its potential recovery claims until after it filed an objection to the Defendants' proof of claim on October 6, 1987. Neptune asserts that in the Fall of 1988, during the discovery process with respect to its motion objecting to the defendants' proofs of claim, it was able to determine that a fraud had allegedly been committed upon it by the defendants with respect to their conduct under the Agency Agreement which entitled Neptune to recover damages and for funds not turned over to it. Accordingly, instead of asserting a counterclaim against the defendants' proofs of claim, Neptune commenced a separate adversary action against the defendants on November 17, 1988, which Neptune characterizes as having the same effect as a counterclaim to the defendants' filed proofs of claim.

Neptune's contentions with respect to being misled and prevented from disclosing potential recovery actions in its disclosure statement raise substantial questions of fact with respect to the application of the doctrine of judicial or equitable estoppel which cannot be decided under a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) and (6) as adopted by Bankruptcy Rule 7012(b). This is so because the doctrine of estoppel, either judicial or equitable, "has never been applied where [the party's] assertions were based on fraud, inadvertence or mistake ..." *In re Corey*, 892 F.2d 829, 836 (9th Cir.1989) (quoting *Konstantinidis v. Chen*, 626 F.2d 933, 939 (D.C.Cir.1980) and *Johnson Service Co. v. Transamerica Insurance Co.*, 485 F.2d 164, 175 (5th Cir. 1973)).

### Subject Matter Jurisdiction

Having determined that neither judicial nor equitable estoppel applies in this case, consideration must be given as to the limits of this court's jurisdiction to entertain an adversary action commenced by the debtor after confirmation and consummation of its Chapter 11 plan to recover for prepetition damages and funds from a creditor which filed a proof of claim which has already been determined by an order entered after a litigated, contested matter.

The effect of a Chapter 11 confirmation is governed by 11 U.S.C. § 1141. Subsection (a) of this section provides that the provisions of a confirmed plan bind the debtor and its creditors, whether or not they accepted the plan. The confirmation of a Chapter 11 plan does not totally divest a bankruptcy court of all jurisdiction in the case. Thus, 11 U.S.C. § 1141(b) permits a debtor to insert language in the plan and order confirming the plan which authorizes the bankruptcy court to retain a limited jurisdiction over specified property of the estate which did not vest in the newly confirmed debtor. This provision reads as follows:

> (b) *Except as otherwise provided in the plan* or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor (Emphasis added).

Therefore, in accordance with 11 U.S.C. § 1141(b), a Chapter 11 plan and order confirming the plan may specifically provide for retention of jurisdiction by the bankruptcy court over actions pending at the time of confirmation and actions commenced after the time of confirmation, and over any assets recovered as a result of these actions. *In re J.E. Jennings, Inc.*, 46 B.R. 167, 170 (Bankr.E.D.Pa.1985); *In re Centennial Industries, Inc.*, 12 B.R. 99 (Bankr.S.D.N.Y.1981). Additionally, 11 U.S.C. § 1142 confers limited post-confirmation jurisdiction upon the bankruptcy court for the purpose of implementing the plan. *See Goodman v. Phillip R. Curtis Enterprises, Inc.*, 809 F.2d 228, 232 (4th Cir.1987).

In the instant case, Section 12 of Neptune's confirmed plan authorized this court to retain post-confirmation jurisdiction: (a) to determine disputed claims; (b) to deal with the allowance, disallowance, estimation or determination of claims against the debtor and (c) for the enforcement of any provisions of the plan. There is no provision in the plan or the order confirming the plan which authorizes a retention of jurisdiction for the purpose of resolving post-confirmation adversary proceedings or, more significantly, permitting the debtor to

commence any adversary proceedings after confirmation. Neptune contends that the retention of jurisdiction in its Chapter 11 plan and order of confirmation with respect to timely filed post-confirmation objections to claims includes the retention of jurisdiction to hear adversary proceedings commenced by the debtor after confirmation for the recovery of preferential transfers, damages and funds claimed by Neptune, citing *In re Centennial Industries, Inc.*, 12 B.R. at 101. There, the court concluded that there was no distinction between the debtor's objection to a claim and an adversary proceeding seeking recovery of alleged transfers. The court cited *Katchen v. Landy*, 382 U.S. 323, 330, 86 S.Ct. 467, 473, 15 L.Ed.2d 391 (1965), where the Supreme Court stated that under the former Bankruptcy Act, "[t]he objection under 57(g) is, like other objections, part and parcel of the allowance process and is subject to summary jurisdiction." Hence, the Bankruptcy Court concluded: "[t]his court holds that a retention of jurisdiction to hear objections to claims is a retention of jurisdiction to hear all controversies affecting the allowance process including a 57(g) objection." *In re Centennial Industries, Inc.*, 12 B.R. at 101. The repayment of preferences was regarded as an activity affecting the allowance of claims.

It should be noted that in *Katchen v. Landy*, the Supreme Court decided an issue arising under the former Bankruptcy Act, and held that a trustee's compulsory counterclaim to recover a preferential transfer, which generally required a plenary action under the former Act, was regarded within the summary jurisdiction of the bankruptcy court as part of the process of allowance and disallowance of preconfirmation claims. *Katchen v. Landy*, 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1965). However, after confirmation of an arrangement under Chapter XI of the former Bankruptcy Act, the bankruptcy court was divested of any summary jurisdiction to entertain a debtor's post-confirmation action to recover preferential transfers. *In re Oceana International, Inc.*, 376 F.Supp. 956 (S.D.N.Y.1974).

■ The court in *In re Centennial Industries, Inc.*, drew no distinction between a contested matter involving a debtor's objection to a claim and an adversary proceeding seeking recovery of a preferential transfer. At times this distinction may become blurred by judicial gloss. An objection to a claim under 11 U.S.C. § 502(b) is not an adversary proceeding as defined in Bankruptcy Rule 7001, but is a contested matter within the meaning of Bankruptcy Rule 9014. The Advisory Committee Note (1983) for Rule 9014 expressly says: "For example the filing of an objection to a proof of claim ... relates to a dispute which is a contested matter." *But see, In re Manville Forest Products, Inc.*, 896 F.2d 1384, 1389 CCH Bankruptcy Law Reports ¶ 73,226 at 96,340 (2d Cir.1990). (The *adversary proceeding* at issue here involves a simple objection to a proof of claim and clearly falls within the literal language of § 157(b)(2)(B), which provides that all proceedings involving "the allowance or disallowance of claims against the estate ... are core matters") (Emphasis added).

■ Even if this court were inclined to accept the bankruptcy court's position in *In re Centennial Industries, Inc.*, that there is no distinction between a contested matter involving a debtor's objection to a claim and an adversary proceeding seeking recovery of alleged preferential transfers, there is a cogent distinction between the posture of the litigation in that case as contrasted with the issues in the instant case. Neptune's objection to the Schneider/Burnham claim was fully litigated and resolved after trial and upon the entry of a final order on May 22,1989 which determined the allowance of the claim. *In re Neptune World Wide Moving, Inc.*, 99 B.R. 584 (Bankr.S.D. N.Y.1989). Unlike the preclusive effect of the May 22, 1989 order in this case, the disputed claim in the *Centennial* case had not been resolved when the creditor moved to dismiss the debtor's post-confirmation adversary proceeding seeking the recovery of preferential payments. Having proceeded to trial on the merits of the disputed claim, the debtor may not now fashion piece meal litigation by invoking the provi-

sions in the confirmed Chapter 11 plan dealing with the court's retained jurisdiction to determine claims as a crutch to support its separate post-confirmation adversary proceeding to recover money and damages from the defendants.

Additionally, Neptune asserts that this court has subject matter jurisdiction over the post-confirmation adversary proceeding because it is a core proceeding involving the allowance or disallowance of claims against the estate, as stated in 28 U.S.C. § 157(b)(2)(B), and because it could be treated as a counterclaim by the estate against persons filing claims against the estate, as delineated in 28 U.S.C. § 157(b)(2)(C). Neptune argues that its adversary proceeding could also be sustained as involving orders to turn over property to the estate as expressed in 28 U.S.C. § 157(b)(2)(E), or as proceedings to determine, avoid or recover preferences, as listed in 28 U.S.C. § 157(b)(2)(F).

■ The fact that Neptune's adversary proceeding might be characterized as core does not mean that this court retains subject matter jurisdiction to hear it after confirmation and after the determination of Neptune's objections to the defendants' claims. The property of the estate has reverted to Neptune pursuant to 11 U.S.C. § 1141(b), whereas the terms of its plan and confirmation order do not provide for retained jurisdiction to sustain post-confirmation adversary proceedings.

## CONCLUSIONS OF LAW

1. This court lacks subject matter jurisdiction to entertain Neptune's post-confirmation adversary proceeding against the defendants.

2. The defendants' motion to dismiss Neptune's adversary proceeding for lack of subject matter jurisdiction is granted.

SETTLE ORDER on notice.