### In re HILLSBOROUGH HOLDINGS CORP., et al., Debtors.

### James W. WALTER, et al., Plaintiffs,

### v.

### The CELOTEX CORPORATION and Jim Walter Corporation, Defendants.

Bankruptcy Nos. 89–9715–8P1 to 89–9746–8P1 and 90–11997–8P1.
Adv. No. 96–340.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

April 11, 1996.

James L. Patton, Jr., Young, Conaway, Stargatt & Taylor, Wilmington, DE.

Richard A. Nielsen, Tampa, FL.

Marsha Griffin Rydberg, Tampa, FL.

Don M. Stichter, Tampa, FL.

Gene Locks, Philadelphia, PA.

Charles E. Koob, Simpson, Thacher & Bartlett, New York City.

Jeffrey Warren, Tampa, FL.

Robert D. Drain, Paul, Weiss, Rifkind, Wharton & Garrison, New York City.

W. Keith Fendrick, Tampa, FL, Steven M. Pesner, Akin, Gump, Strauss, Hauer & Feld, New York City.

Michael B. Colgan, Tampa, FL.

Fred Baron, Dallas, TX.

Joseph Rice, Barnwell, SC.

Howard D. Scher, Philadelphia, PA.

## ORDER ON DEFENDANT THE CELOTEX CORPORATION'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STAY ALL PROCEEDINGS OR TO TRANSFER

ALEXANDER L. PASKAY, Chief Judge.

This is a confirmed Chapter 11 case and the matter under consideration is the Defendant The Celotex Corporation's Motion to

Dismiss or, in the Alternative, to Stay All Proceedings or to Transfer (Motion) filed in the above-captioned adversary proceeding. This proceeding was commenced by James W. Walter and others (Plaintiffs) who named, as defendants, the Celotex Corporation (Celotex) and Jim Walter Corporation (JWC) (Defendants). The Motion asserts four different grounds in support of the proposition that this Court should not consider the merits of the adversary proceeding. The first two grounds relied upon by the Defendants are based on the contentions that because the Amended Joint Plan of Reorganization dated as of December 9, 1994, as Modified (HHC Plan) of Hillsborough Holdings Corporation (HHC) and its affiliates had been confirmed for more than one year, the issues raised by this lawsuit have nothing to do with consummation of the HHC Plan. Instead, Defendants contend the adversary proceeding is nothing more than a suit for breach of contract between non-debtors, which claim should be litigated, if at all, in some other forum. Second, Defendants urge that dismissal is proper because the Complaint does not present a "case or controversy" and, therefore, this Court lacks jurisdiction under Article III, § 2, cl. 1 of the United States Constitution.

Third, Defendants suggest that if this Court entertains this lawsuit it would improperly interfere with the reorganization procedure of Celotex presently pending before the Honorable Thomas E. Baynes, Jr., of this Court. Accordingly, Defendants urge this Court to transfer this adversary proceeding to Judge Baynes. Fourth, Defendants request this Court to abstain and stay the proceedings to allow the Celotex confirmation to proceed to conclusion in an orderly fashion, without delay.

In order to put the issues raised in the Motion in proper focus, a brief recap of the relevant history of the Chapter 11 case of HHC, now known as Walter Industries (Walter Industries), is in order. HHC and its 32 wholly-owned subsidiaries filed a Petition for Relief in this Court under Chapter 11 on Dec. 28, 1989. It was evident from the outset that HHC and its subsidiaries would not be able to achieve rehabilitation under this Chapter unless they were able to resolve, in some way, the threat of lawsuits filed by asbestos-related personal injury claimants (asbestos claimants). These lawsuits loomed over the economic existence and the very survival of not only HCC, but also of its principals, the individuals who are Plaintiffs in this particular adversary proceeding.

To resolve this threat, on January 3, 1990, HCC filed an adversary proceeding, No. 90–3, and sought declaratory relief determining that the corporate veil between it and JWC, its predecessor, could not be pierced, and, in turn, that the asbestos claimants do not have valid enforceable claims against the Debtors and others who were also sued. The declaratory action was ultimately tried by this Court, beginning December 13, 1993, and concluded on December 17, 1993, when the matter was taken under advisement. After reviewing the extensive record, documentary evidence, and the transcript and considering voluminous submissions by the parties, on April 18, 1994, this Court entered an order determining that the asbestos claimants were not entitled to pierce the corporate veil and did not have a valid allowable claim against HHC and others involved in the adversary proceeding. The asbestos claimants, having been aggrieved by the decision, timely filed a Notice of Appeal. On October 18, 1994, the District Court issued its opinion containing lengthy and extensive analysis of the issues and affirmed this Court's decision in toto.

In the summer of 1994, this Court terminated exclusivity granted by § 1121(b) to the Debtors, which triggered an increase in activity toward reorganization. The Debtors, the Bondholders Committee, Apollo Advisors, L.P., and Lehman Brothers Inc. each filed their Plans of Reorganization. After the respective Disclosure Statements had been approved, new issues were raised which had to be resolved before the Plans could be considered for confirmation. Those issues were set for trial in October, 1995. The trial commenced as scheduled but during the trial, this Court directed the parties to convene for a settlement conference in which all parties participated, including Celotex and JWC. As a result, the parties announced in principle their agreement to settle the controversies

with the asbestos claimants. Based on that announcement, this Court discontinued the trial and directed the parties to return to the drawing board and prepare the final form of the Veil Piercing Settlement Agreement (VPSA). The VPSA was actually completed and filed, and approved by this Court with the proviso that the same shall also be approved by the Celotex Court. The VPSA contained specific provisions regarding a § 524(g) injunction, to wit:

§ 4(e) *Covenants.* The Celotex Corporation, JWC, the Official Celotex Committees and the Veil Piercing Claimants' Representatives each agrees to propose and use its respective best efforts to obtain confirmation of a Chapter 11 plan in the Celotex Chapter 11 Case that includes a provision for an injunction pursuant to Section 524(g) of the Code that shall apply to, cover, protect and benefit, *inter alia,* each and all of the released Parties in his/her/its representative capacity as a Released Party or an injunction acceptable to the Released Parties that provides for the same protections afforded by Section 524(g) to the Released Parties. Without limiting the foregoing, such Chapter 11 plan in the Celotex Case *shall include:*

(i) an injunction pursuant to Section 524(g) of the Code that channels all claims being settled herein to a trust contemplated by Section 524(g) of the Code and applies to and covers all of the Released Parties or an injunction acceptable to the Released Parties that provides for the same protections afforded by Section 524(g) to the Released Parties; [and]

(ii) an injunction pursuant to Section 524(g) of the Code which injunction shall apply to and protect each and all of the released Parties or an injunction acceptable to the Released Parties that provides for the same protections afforded by Section 524(g) to the Released Parties.

The approval of the VPSA was considered in due course by the Celotex Court which, on February 13, 1995, entered an order approving the same and granting authority to Celotex and *ordering* Celotex to perform the terms of the VPSA. That Order provided, *inter alia,* that "Celotex is authorized and directed to enter into the Second Amended Settlement Agreement and to render performance in accordance with the terms and conditions of the Second Amended Settlement Agreement."

On March 2, 1995, this Court confirmed HHC's Amended Joint Plan of Reorganization Dated as of December 9, 1994, as Modified (HHC Plan). The linchpin and heart of the HHC Plan, which supported the feasibility requirement of § 1129(a)(11), was the VPSA, which was designed to resolve all claims including the claims of the asbestos claimants against the Debtors and the other parties released by the VPSA. There is hardly any doubt that the central concern of the parties was to put the threat of the asbestos claims to rest forever and ensure, as much as legally possible, finality with respect to resolution of all claims, including future asbestos-related personal injury claims. In order to achieve this goal, the Order confirming the HHC Plan expressly approved the VPSA in its entirety and further stated that the "Debtors are authorized and directed to perform their obligations under the VPSA according to its terms." (HHC Plan, p. 44, para. 2).

Moreover, paragraph 52 of this Court's Order confirming the HHC Plan also expressly reserved jurisdiction to consider, among other things, the following:

(i) To construe and to take any action to enforce the Modified Consensual Plan, Reorganization Documents and this Order, and issue such orders as may be necessary for the implementation, execution and consummation of the Modified Consensual Plan and the execution, delivery and performance of the Reorganization Documents;

(j) To construe and to take any action to enforce the VPSA, including, without limitation, the enforcement of the settlements, injunctions and releases contained or provided for therein and herein, and issue such orders as may be necessary for the implementation of the VPSA; [and]

(k) To determine such other matters and for such other purposes as may be provided in this Order and the VPSA.

It is without dispute that pursuant to the VPSA, HHC agreed and did establish a settlement fund to be administered by Celotex valued at $375 million as consideration for the 524(g) injunction protection. Celotex also agreed to use its best efforts to achieve confirmation of its Plan which provided all released parties to the VPSA with the protection of a § 524(g) injunction. It is also without dispute that the original version of the Celotex Plan of Reorganization included the following to establish the elements required for the § 524(g) injunction:

§ 7.1(b) The Confirmation Order will provide that the requirements of Section 524(g) of the Bankruptcy Code have been met in connection with the issuance of the Supplemental Injunction.

§ 7.1(c) The Confirmation Order will provide that the requirements of Section 524(g) of the Bankruptcy Code have been met for the issuance of the Third Party Injunction.

§ 7.1(d) The Confirmation Order will provide that the requirements of Section 524(g) of the Bankruptcy Code have been met for the issuance of the Veil Piercing Settlement Injunction.

It appears, however, that the Amended Plans of Celotex which followed deleted these provisions. Celotex contends that it is not required to provide for the 524(g) injunction in its Plan, but is permitted to furnish something it deems to be a legal equivalent and Celotex intends to "cramdown" the Plan on the asbestos claimants rather than seek approval of the asbestos claimants as required by § 524(g)(2)(B)(ii)(IV), which of course, would eliminate forever the protective shield offered by the provisions of the 524(g) injunction.

■ The foregoing facts, as recited, form the basic background of the Motion under consideration which are relevant to the resolution of the issues raised by Celotex and JWC in their Motion. Considering those issues seriatim, one might very well argue with persuasion that the matters raised by the Complaint are a controversy between non-debtors; therefore, this Court lacks jurisdiction to consider the claims and the relief requested. However, anyone who is vaguely familiar with the procedural background and the history of the Chapter 11 reorganization case of HCC/Walter Industries and its affiliates, must admit that this is an oversimplification of the issues. As noted earlier, the VPSA is at the heart and core of the reorganization of these Debtors and is an indispensable, vital and inseparable element of their Chapter 11 case. This Court has previously recognized that "[a]lthough it is generally accepted that a Court's post-confirmation jurisdiction should be narrowly construed, substantial case law exists which provides a court with the ability to retain jurisdiction over specific matters." *In re Bicoastal Corp.*, 164 B.R. 1009, 1015 (Bankr.M.D.Fla. 1993) (citing *In re Neptune World Wide Moving, Inc.*, 111 B.R. 457 (Bankr.S.D.N.Y. 1990); *In re A.R.E. Manufacturing Company, Inc.*, 138 B.R. 996 (Bankr.M.D.Fla.1992); *In re Highway Equipment Co.*, 120 B.R. 910 (Bankr.S.D.Ohio 1990); *Prince v. Clare*, 67 B.R. 270 (N.D.Ill.1986)). This Court is satisfied that it is appropriate to retain jurisdiction under these circumstances.

The clear language of the VPSA and the Order of Confirmation of the Chapter 11 cases of HHC and its affiliates leaves no doubt that it was the intention of all parties that the VPSA, as structured, was the only proper vehicle suitable to assure that the Order of Confirmation will furnish the broadest possible protection to the Debtors and those connected with the Debtors, without which the HHC Plan could not have met the requirements of feasibility of § 1129(a)(11). To achieve this goal, which was apparent to all and specifically spelled out in the Order of Confirmation, this Court retained jurisdiction to assure that the terms of the VPSA are carried out to their fullest extent. This Court retained jurisdiction to prevent, as Celotex purports to do, the abandonment of the § 524(g) protection for some undefined, unspecified substitute which is hardly the legal equivalent of the protection contemplated by the parties.

It is intimated by Celotex that if this Court retains jurisdiction of this adversary proceed-

ing, that would, in fact, interfere with its reorganization process and would somehow prejudge whatever Plan Celotex intends to propose and for which it seeks confirmation. This is not even remotely a correct representation of what is sought by the Plaintiffs. There is no intimation, even indirectly, that this adversary proceeding will interfere with the reorganization process in Celotex. Rather, this adversary proceeding requests nothing more and nothing less than that Celotex abide by its promises, and not only do what it promised, but what it was ordered to do by the Celotex Court.

This is not an attempt by these Plaintiffs to exact a guarantee from Celotex or JWC that a particular Plan proposed in Celotex is confirmed. The fact of the matter is that the success or lack of success of that reorganization is of no consequence and is without significance. Neither does this Complaint attempt to influence the Celotex Court to consider whatever Plan is proposed by Celotex or by others, and obviously, that Court is clear to act on any Plan as it deems proper and in accordance with the applicable standards set forth in § 1129(a) of the Bankruptcy Code. The reservation of jurisdiction by this Court was designed to ensure that the provisions of the VPSA and the Order of Confirmation are complied with to the letter of the law, without any unilateral modification to which no one agreed. This Court is not unmindful that there is authority to support the proposition that controversies concerning performance of the confirmed plan may be litigated in a non-bankruptcy forum. *See, e.g., Zerand–Bernal Group, Inc. v. Cox,* 23 F.3d 159 (7th Cir.1994); *OMC Recreational Boat Group, Inc. v. Laino,* No. 88–7473–8P1 through 88–7844–8P1 (Bankr.M.D.Fla. Jan. 9, 1995). However, due to the importance of the resolution of the issue raised by the Complaint, i.e., Celotex's duty to perform its obligations under the VPSA and the express reservation of jurisdiction by this Court to consider all matters relevant to the Chapter 11 cases before this Court, including the injunctive protection provided by § 524(g) provided in the Plan, it is appropriate for this Court to maintain this litigation and resolve the issues raised.

■ The contention that the Complaint presents no case or controversy is similarly without merit; clearly there is a case or controversy raised in the Complaint and, on this ground, the Motion to Dismiss should be denied.

■ This leaves for consideration the two alternatives suggested; first, that this Court stay this adversary proceeding until Celotex completes its confirmation process. This suggestion is merely an indirect way to eliminate the requirement that Celotex live up to its promise. If and when Celotex is able to attain confirmation without the § 524(g) protection, this would render moot the adversary proceeding completely. It appears that Celotex filed its Amended Plan, which is now targeted for confirmation in June of this year. For this reason, it is clear that the issues raised in the Complaint must be resolved before the Celotex case reaches the actual confirmation stage.

■ Lastly, the suggestion that this adversary proceeding should be transferred to the Celotex Court is equally without merit for the following reasons: (1) the interpretation of the VPSA was made in the Chapter 11 case of HHC and its affiliates and not in the Celotex case; (2) the VPSA was approved and embodied in the Order Confirming the HHC Plan entered by this Court and obviously, the interpretation of the VPSA and this Court's own Order of Confirmation could be more properly interpreted and construed by this Court than by a Court which did not enter same.

Based on the foregoing, this Court is satisfied that Defendant The Celotex Corporation's Motion to Dismiss or, in the Alternative, to Stay All Proceedings or to Transfer should be denied.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Defendant The Celotex Corporation's Motion to Dismiss or, in the Alternative, to Stay All Proceedings or to Transfer be, and the same is, hereby denied. It is further

ORDERED, ADJUDGED AND DECREED the Defendants shall have 10 days

from the date of entry of this Order to file their answer to the Complaint, if so deemed to be advised.

DONE AND ORDERED.