In re **HILLSBOROUGH HOLDINGS CORPORATION, et al., Debtors.**

**JIM WALTER HOMES, INC., Mid-State Homes, Inc., Plaintiffs,**

v.

**Leo ADAMS, et al., Defendants,**

**Raul DELGADO, et al., Plaintiffs,**

v.

**Henry KRAVIS, et al., Defendants.**

**Bankruptcy Nos. 89–9715–8P1 to 89–9746–8P1, and 90–11997–8P1. Adv. Nos. 91–371, 91–630.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

Oct. 13, 1992.

Don Stichter, Tampa, Fla., and Michael Crames, New York City, for debtors.

Bryan Powers, Allan Potter, Corpus Christi, Tex., Hector Gonzalez, Alice, Tex., for Jim Walter Homes and Mid–State Homes.

## ORDER ON MOTION FOR PARTIAL SUMMARY JUDGMENT

ALEXANDER L. PASKAY, Chief Judge.

THESE ARE the Chapter 11 cases of Walter Industries, Inc. (Walter Industries), f/k/a Hillsborough Holding Corporation (HHC), and its 32 wholly-owned subsidiaries. The matter presently under consideration is a Motion for Partial Summary Judgment filed by Jim Walter Homes, Inc. (JWH) and Mid–State Homes, Inc. (MSH), two wholly-owned subsidiaries of Walter Industries. Before discussing the Motion under consideration, a brief recap of the procedural background of these adversary proceedings should be helpful.

## HISTORICAL BACKGROUND OF THE CLAIMS OF LEO ADAMS, ET AL, AND RAUL DELGADO, ET AL.

On May 6, 1991, Raul Delgado and numerous other residents of Texas (Texas Plaintiffs) filed a civil action against various non-debtors (Texas Defendants), in the District Court of Jim Wells County, Texas (Texas litigation). The Plaintiffs named several Defendants, including Mid–State Trust II and Wilmington Trust Company, in the Texas litigation. It should be noted that none of the Defendants named in that suit are involved as debtors in these Chapter 11 cases.

The Complaint filed in Texas, titled "Original Petition And Application For Temporary Restraining Order And Temporary And Permanent Injunction," set forth several claims, albeit not in separate counts. The Complaint alleged in part construction defects relating to an alleged lack of installation of a vapor barrier and the construction of the foundation of the homes constructed by JWH. Based on this, the Texas Plaintiffs contended in their Complaint that the homes were not "substantially complete" and, therefore, under the Texas Credit Code, the liens on the homes are unenforceable and therefore, finance charges are not payable. In paragraph XIII, the Claimants alleged:

> that the lack of substantial compliance of the terms of the contract between Jim Walter Homes, Inc. [which is not named

as a defendant] and the [Claimants] makes the collecting and charging of payments by the Defendants, on said contracts a violation of TEX.REV.CIV. STAT.ANN. Art. 5069.6.01 (1987) and is of criminal statute *id.* Art. 5069.8.03 VATS and entitles [Claimants] to those penalties set forth under *id.* Art. 5069.-8.01 and *id.* Art. 5069.8.02 VATS which is a forfeiture of the principal and of twice the interest contracted for, together with the attorney fees incurred."

Although "VATS" is never defined, it appears that this reference is to the Texas Consumer Credit Code (Credit Code).

The claim set forth in Paragraph XIV is based on the Texas Deceptive Trade Practice Act (DTPA), although it does not specifically request damages. The claim in Paragraph XV is based on an alleged fraud and a "violation of Texas Penal Code Ann. § 32.46." In a separate paragraph titled "To the Court Only," the Texas Plaintiffs alleged that pursuant to Texas Consumer Credit Code Ann. § 17.50, they are entitled to recover from the Texas Defendants two times that portion of actual damages that does not exceed $1,000.00. In Paragraph XVII, the Texas Plaintiffs alleged that they are entitled to punitive damages of $7,000,-000.00. Thus, although not very artfully drafted, it appears that the complaint filed in the Texas litigation in part sought damages for violations of the DTPA, Chapter 6 of the Texas Consumer Credit Code (Credit Code), and is also based on common law fraud. As noted previously, none of the Debtors are named as Defendants in the Texas litigation; however, as will be discussed below, one of the Debtors in these cases, Mid–State Homes, Inc., is the beneficial owner of Mid–State Trust II, one of the Defendants named in the Texas litigation.

The Texas litigation was initially removed to the District Court for the Southern District of Texas on June 5, 1991, and then immediately referred to the Bankruptcy Court for the Southern District of Texas, Corpus Christi Division. Thereafter, it was transferred to this Court on September 9, 1991 and it is now pending as Adversary Proceeding No. 91–630.

On June 11, 1991, JWH and MSH initiated an Adversary Proceeding No. 91–371 (Adams Lawsuit), which named all Plaintiffs who commenced the Texas litigation, and also included Leo Adams, et al. and others who might also be potential claimants asserting identical claims which were asserted by the Texas Plaintiffs in the Texas litigation (Homeowners). The Adversary Proceeding commenced by the Debtors consisted of one count and sought to establish that JWH substantially complied with its contractual obligations to its customers and, therefore, the relief sought by the Plaintiffs in the Texas litigation and other purchasers of homes built and sold by JWH should be denied. In addition, the Debtors sought a determination that to the extent any of the Homeowners' claims are based on penalties, forfeitures or punitive damages, these cannot be allowed as a matter of law in any event.

On October 24, 1991, this Court entered an order procedurally consolidating the Texas litigation with the Adversary Proceeding filed by the Debtors. On April 10, 1992, the Debtors filed the motion presently under consideration alleging that there are no disputed genuine issues of material facts and they are entitled to partial summary judgment in their favor on the following issues as a matter of law:

(a) Whether certain claims asserted by the Homeowners are time barred under the Credit Code.

(b) Whether the Credit Code applies to the sale of repossessed homes.

(c) Whether the Homeowners are entitled to recover any damages under the Federal Trade Commission Act.

(d) Whether certain Homeowners are barred from recovering damages by virtue of their prior execution of a release; and

(e) Whether the Homeowners are entitled to recover punitive damages or penalties in a Chapter 11 case.

### UNCONTROVERTED FACTS

The uncontroverted facts as appear from the record are as follows:

JWH is engaged in the business of building partially completed homes and is one of the nation's largest builders of detached single-family homes. JWH operates in approximately 23 states, including Texas, and offers low-cost financing for the construction of a house by JWH on buyer-owned lots. All of the Homeowners entered into Home Purchase Agreements with JWH for the purchase of homes, and if a customer elected to finance the purchase, the customer generally executed a note and a mortgage, or other security interests as appropriate under applicable laws in any given state to secure the unpaid portion of the total purchase price.

In order to finance the operation, JWH, after completing construction of the home and having obtained the notes, the mortgages, and security agreement from the buyers, assigned its interest in the notes and mortgages and in the security interest to MSH, who in turn assigned these instruments, which had an estimated face value of approximately $1.75 billion, to Mid State Trust (Trust II), a Delaware business trust established by MSH, which in turn, issued approximately $1.45 billion of public AAA-rated, mortgage-backed notes, bonds secured by the mortgage portfolio acquired from MSH. MSH is the sole beneficiary of Trust II and owns all beneficial interests in the notes and mortgages in Trust II. Wilmington Trust Company (Wilmington), as trustee of Trust II, owns legal title to the notes and mortgages.

For the 250 Homeowners listed in "Exhibit B" to the Motion for Partial Summary Judgment, the Home Purchase Agreements were consummated prior to May 6, 1987. Finance charges in Home Purchase Agreements for the 250 Homeowners listed in "Exhibit B" were either contracted for, charged, or received prior to May 6, 1989. For the 80 Homeowners listed in "Exhibit E" to the Motion for Partial Summary Judgment the Home Purchase Agreement involved the purchase from either JWH or MSH of a previously repossessed, already constructed home, together with the land on which the home had already been built.

Every Home Purchase Agreement contained the following language:

### NOTICE

ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS AND SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER

All Homeowners listed in "Exhibit B" and "Exhibit E" to the Motion for Partial Summary Judgment have lived in the home purchased pursuant to the Home Purchase Agreement since prior to July, 1990.

It should also be noted that prior to May 6, 1991, each of the 26 Homeowners listed in "Exhibit G" to Motion for Partial Summary Judgment entered into settlement agreements with JWH. These agreements provided in pertinent part that the Homeowners released JWH and its affiliates, officers, employees, and agents from all claims of any kind including those pertaining to or involving the construction of a residence and the documents prepared in connection therewith.

Based on these facts, the Debtors contend they are entitled to a partial judgment in their favor on the issues outlined above. Although the facts recited above are uncontroverted, in opposition the Homeowners contend that the Debtors are not entitled to a judgment in their favor as a matter of law.

### CREDIT CODE CLAIMS

As a threshold issue, the Debtors contend that as to many Homeowners, the claims in the Texas litigation based on the Texas Credit Code are barred by the applicable statute of limitations. The Texas Credit Code provides that a party may bring suit against one who contracted for, charged, or received interest in excess of double the amount authorized. TEX.REV.

CIV.STAT.ANN. art 5069–8.04(a) (1987). The Texas Credit Code then provides:

such actions may be brought within four years from the date of the loan or retail installment transaction or within two years from the date of the occurrence of the violation, whichever is later; provided however, that in the case of open-end credit transactions, such actions may be brought within two years from the date of the occurrence of the violation.

It is undisputed that 250 of the Plaintiffs in the Texas litigation and named as Defendants in this Adversary Proceeding, entered into the Home Purchase Agreement with JWH over four years prior to May 6, 1991, the date that they filed their suit in Texas. Therefore, based on the Texas Credit Code, the 250 Defendants listed on "Exhibit B" are barred to assert any claim unless they can show that the Debtors violated the Credit Code by charging, contracting for, or receiving interest in excess of double the amount authorized by the statute within the two years prior to May 6, 1991, and that the Debtors committed a continuing violation as long as they held liens on the houses or received payments from the purchases of the homes constructed and sold by JWH

In this connection, it should be noted that a new violation for purposes of the statute of limitations does not occur from each new event connected with the loan transaction. *Mayfield v. San Jacinto Sav. Ass'n*, 788 S.W.2d 119, 121 (Tex.Ct.App. 1990). As stated by the Texas Court in *Jim Walter Homes, Inc. v. Castillo*, 616 S.W.2d 630, 632 (Tex.Ct.App.1981):

[I]f we were to agree with Plaintiffs' contention that the "occurrence of the violation was continuing as long as the first lien remained on the property," we could find that this lawsuit could be maintainable from May, 1974, when the lien arose, until April, 1991, two years after the final payment was made. This result would be unreasonable, so the continuing violation theory cannot be accepted. Accordingly, we hold that the Credit Code cause of action is barred by limitations.

Therefore, this Court is satisfied that the time period for filing a complaint based on the Credit Code's usury provisions against the Debtors for the 250 houses owned by the Homeowners listed on "Exhibit B" has expired and as to these claims summary judgment should be granted in favor of the Debtors.

■ Next, the Debtors contend that Chapter 6 of the Credit Code applies only to the sale of tangible personal property and does not apply to the sale of real property. TEX.REV.CIV.STAT.ANN. art. 5069–6.01 (1987). Therefore, the Debtors contend that they are entitled to summary judgment regarding the Texas Credit Code claims of those Claimants listed on "Exhibit E" to the Motion, who purchases repossessed homes. Chapter 6 of the Texas Credit Code regulates the retail installment sale of goods and services. Chapter 6 defines a "retail installment transaction" as:

> any transaction in which a retail buyer purchases goods or services from a retail seller pursuant to a retail installment contract or retail charge agreement, as defined in this Article, which provides for time price differential, as defined in this Article, and under which the buyer agrees to pay the unpaid balance in one or more installments together with the time-price differential.

*Id.* art. 5069–6.01(e). Chapter 6 defines "goods" as:

> all tangible personal property when purchased primarily for personal, family, or household use and not for commercial or business use, including such property which is furnished or used at the time of sale or subsequently, in the modernization, rehabilitation, repair alteration, improvement or construction of real property so as to become a part thereof whether or not severable therefrom.

*Id.* art. 5069–6.01(a).

Although Chapter 6 includes in the definition of "goods," "a structure, except a mobile home, to be used as a residence," *id.* art. 5069–6.01(a), the language applies only to a house, or to the materials used to build a house *before* it is affixed to the real property and becomes part of the real es-

tate. *Griggs v. Magnolia Petroleum Co.,* 319 S.W.2d 818, 819 (Tex.Ct.App.1958).

It is undisputed that 80 of the Homeowners listed in "Exhibit E" purchased a repossessed house and the land to which the house was affixed. Therefore, it is clear that for the purposes of the Texas Credit Code, the Homeowners purchased real property, therefore, the Debtors are entitled, as a matter of law, to partial summary judgment against those Homeowners listed on "Exhibit E" to the Motion regarding claims based on Chapter 6 of the Texas Credit Code. Of course, this ruling does not impact those Homeowners who purchased new homes from JWC, which the Debtors concede would qualify as personal property under the Texas Credit Code.

## FTC DAMAGE CLAIMS

■ The Debtors also contend that they are entitled to summary judgment against all Homeowners under the Code of Federal Regulations, 16 C.F.R. § 433.2 (1991). Section 433.2(a) provides that it is an unfair or deceptive trade act or practice within the meaning of the Federal Trade Commission Act for a seller to take or receive a consumer credit contract that fails to contain the following language.

### NOTICE

ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS AND SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

*Id.* § 433.2(a). There is no question that all contracts through which the Homeowners purchased homes contained this notice.

The Official Comment to § 433.2 states that "[c]onsumers will not be in a position to obtain affirmative recovery from a creditor, unless they have actually commenced

payment and received little or nothing of value from the seller." Preservation of Consumers' Claims and Defenses, Final Regulation, Proposed Amendment and Statement of Basis and Purpose, 40 Fed. Reg. 53527 (Nov. 18, 1975) (to be codified at 16 C.F.R. § 433.2). *See also Felde v. Chrysler Credit Corp.*, 219 Ill.App.3d 530, 162 Ill.Dec. 565, 570, 580 N.E.2d 191, 196 (Ill.App.Ct.1991); *Ford Motor Credit Co. v. Morgan*, 404 Mass. 537, 536 N.E.2d 587, 590 (1989).

Relying on the language of the Official Comment, most cases hold that, absent a showing that the Claimants received little or nothing of value, the Homeowners are not entitled to an affirmative recovery of amounts paid pursuant to their respective Home Purchase Agreements. 40 Fed.Reg. at 53527; *Felde*, 162 Ill.Dec. at 570, 580 N.E.2d at 196; *Morgan*, 536 N.E.2d at 590. *See Oxford Fin. Co. v. Velez*, 807 S.W.2d 460, 463 (Tex.Ct.App.1991). Further, courts uniformly interpret the plain language of § 433.2(a) as limiting the amount of recovery to amounts paid by the debtor under the credit contract. *See, e.g., Tinker v. DeMaria Porsche Audi, Inc.*, 459 So.2d 487 (Fla.Dist.Ct.App.1984); *Thomas v. Ford Motor Credit Co.*, 48 Md.App. 617, 429 A.2d 277 (1981); *Morgan*, 536 N.E.2d at 590 n. 4; *Hempstead Bank v. Babcock*, 115 Misc.2d 97, 453 N.Y.S.2d 557 (N.Y.Sup. Ct.1982); *Hardeman v. Wheels, Inc.*, 56 Ohio App.3d 142, 565 N.E.2d 849, 852 (1988); *Perez v. Briercroft Serv. Corp.*, 809 S.W.2d 216 (Tex.1991).

There is no question that the Homeowners actually commenced payment and obtained possession of their homes, which without doubt, have value. Therefore, as to this issue, the Debtors' Motion must be granted.

### EFFECT OF SETTLEMENT AGREEMENTS

■ As noted previously, the 26 Homeowners listed on "Exhibit G" to the Motion entered into settlement agreements with JWH, which provided in pertinent part that the Homeowners released JWH and its affiliates, officers, employees, and agents from all claims of any kind including those pertaining to or involving the construction of a residence. Under Texas law, a settlement agreement or release that is valid on its face and has not been set aside is a complete bar to any action by the releasor based on matters covered and discharged by the settlement agreement or release. *Hart v. Traders & Gen.Ins.Cop.*, 144 Tex. 146, 189 S.W.2d 493, 494 (1945); *MBank El Paso Nat'l Ass'n v. Featherlite Corp.*, 792 S.W.2d 472, 476 (Tex.Ct.App.1990); *Deer Creek Ltd. v. North Am Mortgage Co.*, 792 S.W.2d 198, 201 (Tex.Ct.App.1990); *Turner v. PV Int'l Corp.*, 765 S.W.2d 455, 463 (Tex.Ct.App.1984).

It is undisputed that the Homeowners have neither attempted to set aside these releases nor alleged that the releases are invalid. Therefore because no genuine issue of material fact exists regarding the validity of the releases attached to "Exhibit H" of the Motion, Debtors are entitled to summary judgment as a matter of law against the Homeowners listed on "Exhibit G" to the Motion.

### RECOVERY OF PENALTIES AND PUNITIVE DAMAGES

■ As noted above, the Plaintiffs with the Texas litigation seek forfeitures, penalties, and punitive damages under the DTPA, Credit Code and also based on common law fraud. Although Chapter 11 of the Bankruptcy Code makes no provision for the allowance of claims based on a fine, penalty, or punitive damages, these are dealt with under § 726(a)(4) of the Bankruptcy Code. Section 726(a)(4) of the Bankruptcy Code provides in pertinent part that claims for fines, penalties and punitive damages are to be severed into two parts: the portion of the claim which constitutes an actual pecuniary loss and that portion of the claim which constitutes a penalty for wrongdoing. See 4 *Collier on Bankruptcy* ¶ 706.02 (15th ed. 1990). The portion of the claim which is based on a penalty is then subordinated to the portion which is based on actual pecuniary loss. See 11 U.S.C. § 726(a)(1) and (a)(4).

■ Be that as it may, § 103 dealing with the "Applicability of chapters" specifically states that: "(b) Subchapters I and II of Chapter 7 of this title apply *only* in a case under such chapter." (emphasis added). Subchapter II which encompasses § 726 is therefore not applicable to a Chapter 11 case. *Id. see also, Matter of Celotex Corp.,* 128 B.R. 478, 484 n. 12 (Bankr. M.D.Fla.1991); *In re Colin,* 44 B.R. 806 (Bankr.S.D.N.Y.1984); *In re A.H. Robins Co., Inc.,* 89 B.R. 555 (E.D.Va.1988). Nevertheless, it is clear that even though Chapter 11 of the Bankruptcy Code does not specifically provide for the treatment of claims based on a fine, penalty or punitive damages, the bankruptcy courts traditionally have not favored such claims. This approach has been justified on the basis that an allowance of a claim based on a penalty punishes innocent parties, i.e., the entire body of creditors, and not the actual wrongdoer who deserves the punishment and the entity which the Statute imposing the penalty intended to deter and to punish. *In re A.H. Robins Co., supra; In re GAC,* 6 B.R. 981 (S.D.Fla.1980) aff'd 681 F.2d 1295 (11th Cir.1982); *In re Bicoastal Corp.,* 134 B.R. 50 (Bankr.M.D.Fla.1991). Based on these policies, it is well established that "[e]quity provides this Court the power to disallow punitive damages if the Court determines that such allowance would frustrate the successful reorganization of the [Debtors]." *In re Robins, supra,* at 562.

■ Punitive damage awards are meant to deter a future wrongdoing and to punish the entity which caused injury. *Pace v. State of Texas,* 650 S.W.2d 64 (Tex. 1983). The award of punitive damages here would only harm other innocent creditors of JWH and MSH. There are a vast number of claims filed against JWH and MSH. The award of punitive damages to the Defendants would be inequitable as it would drain the assets of the estate to the detriment of other creditors.

In sum, this Court is satisfied that considerations of fundamental fairness, applied to the circumstances of these reorganizations, mandate that the punitive damage claims like those asserted by the Homeowners be disallowed.

As part of their Complaint, the Texas Plaintiffs seek double and treble damages under the DTPA, and damages under the Credit Code including forfeiture of certain amounts received, based on TEX.REV.CIV. STAT.ANN. Art. 4069–8.02. If the amount received is twice the amount for which the parties contracted, the parties receiving payment shall forfeit as an *additional penalty* all principal or principal balance. TEX.REV.CIV.STAT.ANN. Art. 5069–8.02. The Texas Plaintiffs also seek $7,000,000 of punitive damages under common law fraud.

There can hardly be any question that punitive damages based on fraud, and the treble damages under the DTPA are exemplary or punitive in nature. The DTPA treble damages are intended to deter future similar conduct and to punish the DTPA violator. *See Pace v. The State of Texas, supra.* Likewise, the purpose of the Texas Credit Code is not designed to compensate consumers for damages actually incurred but is instead "purely penal in nature." *LaPetina v. Metro Ford Truck Sales, Inc.,* 648 F.2d 283, 288–89 (5th Cir. 1981). Therefore, this Court is satisfied that any claims seeking anything other than actual and compensatory damages must be disallowed.

In sum, this Court is satisfied that the Motion For Partial Summary Judgment should be granted, and the Debtors are entitled to a partial summary judgment determining that:

(a) the claims of the 250 Homeowners listed in "Exhibit B" to the Motion are time barred under the Texas Credit Code;

(b) the Texas Credit Code does not apply to the sale of repossessed homes;

(c) the Homeowners are not entitled to recover any damages under the Federal Trade Commission Act;

(d) the Homeowners listed on Exhibit G to the Motion are barred from recovering damages by virtue of their prior execution of a release.

(e) the Homeowners are not entitled to recover punitive damages or penalties in these cases.

Based on the foregoing, it is

ORDERED, ADJUDGED AND DE-CREED that the Motion is granted, and the Debtors are entitled to a Partial Summary Judgment in their favor as to the following:

(a) the claims of the 250 Homeowners listed in "Exhibit B" to the Motion are time barred under the Texas Credit Code;

(b) the Texas Credit Code does not apply to the sale of repossessed homes;

(c) the Homeowners are not entitled to recover any damages under the Federal Trade Commission Act;

(d) the Homeowners listed on Exhibit G to the Motion are barred from recovering damages by virtue of their prior execution of a release.

(e) the Homeowners are not entitled to recover punitive damages or penalties in these cases.

It is further

ORDERED, ADJUDGED AND DE-CREED that a continued pre-trial hearing in order to frame the remaining issues and to consider any and all properly-noticed pending motions is set for October 20, 1992 at 1:30 p.m. in Courtroom A, 4921 Memorial Highway, Tampa, Florida 33634.

DONE AND ORDERED.