**In re HILLSBOROUGH HOLDINGS CORPORATION, et al., Debtors.**

**Salvador and Rosalie Cavazos, et al., Plaintiffs,**

**v.**

**Mid–State Trust II, et al., Defendants.**

**Bankruptcy Nos. 89–9715–9P1 to 89–9746–8P1, 90–1197–8P1. Adversary No. 00–500.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

Sept. 28, 2001.

Abraham Moss, Corpus Christi, TX, W. Keith Fendrick, Annis, Mitchell, Cockey, Edwards & Roehn, P.A., Tampa, FL, for plaintiffs.

Larry Hyden, Jordan, Hyden, Womble & Culbreth, P.C., Corpus Christi, TX, Don M. Stichter, Stichter, Riedel, Blain & Prosser, P.A., Tampa, FL, for defendants.

### Memorandum Decision and Order on Plaintiffs' Motion to Remand, Defendants' Motion to Dismiss for Failure to State a Claim, and Defendants' Motion for Summary Judgment

MICHAEL G. WILLIAMSON, Bankruptcy Judge.

THIS CASE came on for hearing on February 21, 2001 ("Hearing"), on the following motions: (1) Motion to Remand filed by Salvador and Rosalie Cavazos *et al.* ("Plaintiffs") (Doc. No. 37)("Remand Motion"); (2) the Motion to Dismiss for Failure to State a Claim filed by Mid–State Trust II ("Trust II"), Jim Walter Homes, Inc. ("JWH"), Mid–State Homes, Inc. ("MSH") (collectively, "Defendants") (Doc. No. 102) ("Motion to Dismiss") and (3) the Defendants' Motion for Summary Judgment (Doc. No. 106) ("Motion for Summary Judgment").

The court has considered the entire record, including the parties' briefs and argument of counsel, the affidavits and exhibits that are part of the record in this proceeding, and the other filings with the court.

For the reasons set forth below, the court will deny Plaintiffs' Remand Motion and grant Defendants' Motion for Summary Judgment.

### Procedural Background

Defendants, with the exception of Trust II, filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code on December 27, 1989 and continued as debtors-in-possession—they managed and operated their businesses—pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

Trust II is a Delaware business trust established by MSH. MSH assigned

notes and mortgages to Trust II, which in turn issued public mortgage-backed notes. MSH is the sole beneficiary of Trust II.[1] *See In re Hillsborough Holdings Corp.,* 146 B.R. 1015, 1018 (Bankr.M.D.Fla. 1992)("*HHC*").

JWH is in the business of constructing semi-finished homes and MSH services all mortgages by JWH. *See In re Hillsborough Holdings Corp.,* 144 B.R. 920, 921 (Bankr.M.D.Fla.1992)("*HHC2*"). Finance charges on the mortgages generated are reported to the Internal Revenue Service ("IRS") using the straight-line method of accounting. *Id.* at 922. During the bankruptcy case, the IRS challenged such use of the straight-line method with respect to the sale of repossessed homes (conceding that the method was appropriate for new homes). *Id.* at 923. This court ruled that the use of the straight-line method was appropriate for repossessed homes. *Id.* Plaintiffs do not dispute that this is the method of accounting used by Defendants in reporting to the IRS since as early as approximately 1965.

During the pendency of Defendants' bankruptcy cases, Plaintiffs were party plaintiffs in certain adversary proceedings filed in this court—Adversary Proceeding Nos. 91–630, 93–16, 93–25, 93–52, 93–57, 93–61, 93–207 93–371 and 93–847—in which the Defendants and others were the named party defendants.

1. While Trust II was not a Debtor, it was a named defendant in the adversary proceedings filed by the Plaintiffs in the bankruptcy cases.

2. *Exhibit "A"* to Defendants' Motion for Summary Judgment.

3. Further, the Plaintiffs in Adversary Proceedings Nos. 91–371, 91–630 and 93–847 entered into a Third Stipulated Judgment on September 25, 1996, in which the court ordered these proceedings dismissed with prejudice. *See, e.g.,* Doc. No. 1552 in Adversary Proceeding No. 91–371. Additionally, in this set of

Additionally, many, if not most, of the Plaintiffs also filed proofs of claims in Defendants' bankruptcy cases.

On May 16, 1995, the Plaintiffs and Defendants entered into a settlement agreement ("Settlement Agreement") to resolve and settle Plaintiffs' claims arising from the nine adversary proceedings pending before the court and certain other suits pending before various state courts.[2] The Settlement Agreement was approved by this court by order dated July 13, 1995.

Pursuant to the Settlement Agreement, the Defendants and each of the Plaintiffs entered into Modification and Extension Agreements dated May 17, 1995 ("Modification and Extension Agreements"). Additionally, as part of the Settlement Agreement, the various adversary proceedings filed by the Plaintiffs were dismissed with prejudice.[3]

Paragraph D of the Settlement Agreement defines the "Claims" (subject to the Settlement Agreement) very broadly to include all litigation pending before state courts and adversary proceedings before this court as well as:

assertions of allegedly recompensable damages made by one or more Homeowners against one or more of the Mid–State Parties arising out of or relating to the sale, construction, *financing* and/or *documentation* of houses originally con-

adversary proceedings, this court entered a Third Stipulated Findings of Facts and Conclusions of Law on October 16, 1996, finding that there was no wrongdoing by the Defendants in their collection of the accounts, and in "all claims or causes of action asserted by the Homeowners in any of their pending lawsuits or claims." *See, e.g.,* Doc. No. 1551 in Adversary Proceeding No. 91–371.

Similarly, Adversary Proceeding Nos. 93–207, 93–847 and 91–630 were dismissed with prejudice. *Doc. No. 17 in Adv. Pro. No. 93–207; Doc. No. 152 in Adv. Pro. No. 93–847; and Doc. No. 48 in Adv. Pro. No. 91–630.*

structed by JWH or *arising out of the collection of indebtedness incurred in connection therewith, regardless of the manner of the assertion thereof, including, but not limited to, all such potential assertions in existence on the Closing Date that have not been filed or included in any pending proceeding, but which could have been asserted ....* (emphasis added).

Settlement Agreement at 2.

Paragraph 23(8) provided that this court retain jurisdiction for the purposes of interpretation and enforcement of the Settlement Agreement:

> The parties hereto agree to request the U.S. Bankruptcy Court for the Middle District of Florida, Tampa Division, to retain jurisdiction for the purpose of the interpretation and enforcement of the provisions of this Agreement and for the disposition of any Claims which are not settled pursuant to this Agreement....

Paragraph 28 also contains substantially similar language as in paragraph 23(8), which is quoted above. Paragraph 24 states that "[t]his Agreement shall be governed by the laws of the State of Florida."

Paragraph 16 of the Settlement Agreement further provided for the execution of releases by the Plaintiffs to the Defendants resolving all claims that were or could have been asserted ("Releases"). Specifically, paragraph 4 of the Releases states that "the undersigned (and assigns) fully, finally and forever release, acquit and discharge" the Defendants (among other parties) and successors (defined in the Releases as "Mid–State Parties"), employees, etc ...

> from and against any and all claims, debts, demands, liabilities or causes of action of every kind, character and nature, including claims for any of the Mid–State Parties from the beginning of

time to the date hereof, arising out of or in any manner related to (i) the ... financing of the house constructed by Jim Walter Homes, Inc. and/or Mid–State Homes, Inc., ... including but not limited to, any of the documents pertaining to the ... financing ... and ... all claims or causes of action asserted by or *which could have been asserted by* the undersigned in any of the pending lawsuits or Claims .... (emphasis added).

The Releases also provided that the signatories "fully and completely indemnify and hold harmless each of the Mid–State Parties...." *Release at ¶ 5.*

The plan of reorganization was confirmed by order of this court dated March 2, 1995.

On July 30, 1999, Plaintiffs filed their original petition ("Original Complaint") in Jim Wells County, Texas. The Original Complaint alleged breach of the Settlement Agreement and violations of the Texas Finance Code. The Original Complaint specifically referenced the Modification and Extension Agreements and Releases as the basis for the alleged violations of the Texas Finance Code. In Defendants' original answer, they raised affirmative defenses which are essentially premised on Defendants' bankruptcy—for example: (1) any cause of action by Plaintiffs has been discharged by the plan of reorganization; (2) all these alleged claims were settled as part of the Settlement Agreement; and (3) related doctrines such as "release" and "accord and satisfaction."

On August 20, 1999, Defendants removed the litigation to the Bankruptcy Court for the Southern District of Texas (the "Texas Bankruptcy Court") pursuant to 28 U.S.C. §§ 1441(b) and 1452(a). Removal was premised upon: (1) the complete diversity of citizenship between Defendants and Plaintiffs [4]; (2) the causes of

---

4. A federal district court has original "diversi- ty" jurisdiction where the suit is between citi-

action which arose from the Settlement Agreement; and (3) the affirmative defenses asserted by the Defendants which arise from bankruptcy law.

On September 1, 1999, Defendants filed a motion in the Texas Bankruptcy Court seeking to transfer venue of this lawsuit to this court. In response, Plaintiffs filed an objection to jurisdiction and the Remand Motion arguing, *inter alia,* that the claims alleged in the Original Complaint arose after the effective date of the Settlement Agreement.

After a hearing, on February 22, 2000, the Texas Bankruptcy Court entered an order that granted Defendants' motion to transfer venue to this court. Plaintiffs filed a notice of appeal of this order on February 23, 2000, and on February 25, 2000, they filed "Plaintiffs' Motion for Leave to File Notice of Appeal." The United States District Court for the Southern District of Texas ("Texas District Court") entered an order denying Plaintiffs' motion. Thereupon, the adversary proceeding was transmitted to this court on August 9, 2000.

Plaintiffs filed their Motion to Re-transfer and Memorandum of Law in Support Thereof (Doc. No. 96) ("Motion to Re-transfer") with this court. On September 19, 2000, this court held a hearing on the Motion to Re-transfer. Plaintiffs conceded that the litigation challenged the validity of the Settlement Agreement and indicated their desire to amend their petition. By order dated October 5, 2000, this court denied the Motion to Re–Transfer without prejudice (Doc. No. 98).

On October 25, 2000, Plaintiffs filed their Second Amended Petition (Doc. No. 99)("Second Amended Complaint"). In response, Defendants filed their Motion to Dismiss on December 5, 2000, as well as their First Amended Answer to the Second Amended Complaint. Three days later, on December 8, 2000, Defendants filed their Motion for Summary Judgment.[5]

On February 5, 2001, Plaintiffs filed their Memorandum in Support of the Remand Motion (Doc. No. 121)[6] and on that same date, Plaintiffs filed their Motion for Leave to File Third Amended Original Complaint ("Third Amended Complaint") (Doc. No. 125). On that same date, Plaintiffs filed their First Amended Objection and Response to Defendants' Motion for Summary Judgment (Doc. No. 123). On February 20, 2001, Defendants consented to Plaintiffs' Third Amended Complaint (Doc. No. 130), and Defendants filed their Objection and Reply to Plaintiffs' Objection and Response (Doc. No. 129).[7] This court granted Plaintiffs' Motion for Leave

zens of different states and the amount of controversy exceeds $75,000, exclusive of costs and interest. Plaintiffs did not contest diversity nor that the damages they seek are in excess of $75,000.

5. Fed.R.Civ.P. 12(b) (made applicable to this proceeding by Fed. R. Bankr.P. 7012) states that a motion for failure to state a claim upon which relief can be granted shall be treated as a motion for summary judgment under Fed. R.Civ.P. 56 (made applicable through Fed. R. Bankr.P. 7056) when matters outside the pleadings are presented and not excluded by the court. Accordingly, as the Defendants (1) presented evidence outside the pleadings and (2) filed a later Motion for Summary Judg-

ment, this court will consider the Defendants' Motion to Dismiss as one for summary judgment, which motion is superceded by their later filed motion.

6. It should be noted that the Remand Motion was filed on October 14, 1999, when the case was still pending before the Texas Bankruptcy Court. It is now part of the record as Doc. No. 37.

7. Plaintiffs' Third Amended Complaint also dismissed a defendant, Best Insurers, Inc., because Plaintiffs dropped their cause of action related to alleged insurance violations. *See Order,* Doc. No. 136.

to File Third Amended Original Complaint at the Hearing (Doc. No. 135).[8]

Plaintiffs' Third Amended Complaint abandoned certain claims including (1) their challenges to the validity of the Settlement Agreement; (2) claims related to charging and/or collecting a time-price differential that exceeds an add-on charge allowed pursuant to section 345.005 of the Texas Finance Code; (3) their insurance claims related to violations of the Texas Finance Code and (4) claims related to the Texas Insurance Code. As a result, the remaining cause of action asserted by Plaintiffs in their Third Amended Complaint is premised upon the manner in which Defendants report income derived from the finance charges to the IRS.

On the same date, Defendants filed their memorandum in opposition to Plaintiffs' Remand Motion (Doc. No. 128).

## Conclusions of Law

### A. *Jurisdiction*

■ At the Hearing, the court noted that there was no pending motion to remand by Plaintiffs scheduled for hearing in the court's calendar. Defendants argued that since the Remand Motion was essentially premised upon the lack of jurisdiction of this court, this threshold issue must have been necessarily considered and determined by the Texas Bankruptcy Court and Texas District Court in their decision to transfer the litigation to this court. However, Plaintiffs asserted that the Remand Motion was never expressly ruled on by the transferring Texas Bankruptcy Court or the Texas District Court and that there is no order denying their previously filed motion. Although this court is in agreement with Defendants, jurisdiction is always a threshold issue and

in the absence of an explicit order disposing of the Remand Motion by any court, this court will address Plaintiffs' jurisdictional arguments.

■ A defendant removing a case has the burden of proving jurisdiction. *See Rogers v. Wal–Mart Stores, Inc.*, 230 F.3d 868 (6th Cir.2000)("*Rogers*") (citing *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97, 42 S.Ct. 35, 66 L.Ed. 144 (1921)). As noted previously, Plaintiffs subsequently twice amended their complaint. Plaintiffs in the Third Amended Complaint allege that they do not seek any relief prior to the execution of the Settlement Agreement. The inference that Defendants wish for this court to make is that the Plaintiffs are attempting to circumvent this court's jurisdiction by avoiding any references to the Settlement Agreement.

■ However, it is settled law that federal court jurisdiction may not be frustrated by dismissing claims or causes of action that form the basis for federal court jurisdiction. *Rogers*, 230 F.3d at 871–73 (post-removal stipulation that plaintiff sought amount below $75,000 could not defeat diversity jurisdiction because "[i]f plaintiffs were able to defeat jurisdiction by way of a post-removal stipulation, they could unfairly manipulate proceedings merely because their federal case begins to look unfavorable"); *Cavallini v. State Farm Mutual Auto Insurance Co.*, 44 F.3d 256, 265 (5th Cir.1995) (recognizing well settled principle that a plaintiff may not defeat removal by amending complaint); *In re Bridgestone/Firestone, Inc., ATX, ATX II, and Wilderness Tires Products Liability Litigation*, 128 F.Supp.2d 1198, 1201–02 (S.D.Ind.2001) (citing *Hammond v. Termi-*

---

8. It should be noted that as of the date of this Memorandum Decision and Order, the actual Third Amended Complaint has yet to be officially filed. However, since the Third Amended Complaint was attached to the Leave Mo-
tion, and the parties have not objected to this procedural defect, the court will deem the Third Amended Complaint filed for purposes of ruling.

*nal Railroad Ass'n,* 848 F.2d 95(7th Cir. 1988)). *Cf. Carnegie–Mellon University v. Cohill,* 484 U.S. 343, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988) (jurisdiction should be reviewed as of the time of removal to federal court).

At the time of the removal, the Original Complaint clearly referenced the Settlement Agreement and related documents as a basis for Plaintiffs' causes of action. The issue before this court nevertheless still remains: whether this litigation is barred by the Settlement Agreement, confirmed plan of reorganization, or related doctrines—which arose because of Plaintiffs' prior actions in Defendants' bankruptcy cases and this court's adjudication and approval of certain matters in the bankruptcy case.

Even after the complaint had been amended by the Third Amendment, the issues to be decided still turn on interpretation of the Settlement Agreement and whether any liability alleged by Plaintiffs in this action was discharged in Defendants' bankruptcy.

As an initial matter, this court notes that it is well settled that a federal court retains jurisdiction to enforce settlement agreements. *In re Stokes,* 198 B.R. 168 (E.D.Va.1996) ("*Stokes*"); and *In re Hillsborough Holdings Corp.,* 197 B.R. 366 (Bankr.M.D.Fla.1996) ("*HHC3*"). *Stokes* involved a settlement agreement that was reached in an adversary proceeding in bankruptcy court. When one party allegedly breached the settlement agreement, the bankruptcy court concluded that it had authority under § 105(a) to enforce the settlement agreement. The district court affirmed that decision of the bankruptcy court and noted that:

> [a] district court possess[es] inherent jurisdiction and equitable power to enforce agreements entered into in settlement of litigation before that court. . . . Where, as here, a settlement agreement

is executed under the auspices of the Bankruptcy Court, is approved by that court, and subsequently becomes a basis for an order confirming a proposed plan of reorganization, the Bankruptcy Court *undoubtedly has jurisdiction to enforce the Settlement Agreement* under the foregoing principles as well as pursuant to the powers conferred upon the Bankruptcy Court pursuant to 11 U.S.C. § 105(a).

*Stokes,* 198 B.R. at 175.

Similarly, the Original Complaint alleged violations of the Settlement Agreement, which agreement was reached in the global resolution of the many adversary proceedings before this court. This very agreement was approved by this court and as a basis of this agreement, Plaintiffs participated in Defendants' confirmed plan of reorganization.

Now Defendants assert that the terms of the Settlement Agreement should be enforced and that Plaintiffs are barred from re-litigating by the terms of the Settlement Agreement and the releases executed as part of the Settlement Agreement. Under such circumstances, this court finds that it has jurisdiction over this proceeding. *See HHC3,* 197 B.R. 366 (this very court determined that it had jurisdiction to retain jurisdiction over an adversary proceeding—after the case had been confirmed—to enforce the terms of another settlement agreement reached in this very case because the plan provided for the reservation of this court's jurisdiction and the settlement agreement was a central component of the plan); *In re Fleet Service Corp., Inc.,* 144 B.R. 909 (Bankr.M.D.Fla.1992)(bankruptcy court retained jurisdiction over adversary proceeding with preference and fraudulent conveyance causes of action which had been settled in a dismissed chapter 11 case and could rule on motion to enforce settlement agreement when compromise was

approved by the court and declining to retain jurisdiction would deprive debtor of its rights under the Bankruptcy Code).

Moreover, Defendants assert that these very claims are barred by the discharge injunction of 11 U.S.C. § 1141. Under the Bankruptcy Code, all claims of creditors which arose prior to confirmation are discharged and the debtor need not pay them, except as provided by the plan. The issue for this court to decide, despite the post-removal amendments: whether the Plaintiffs causes of action indeed arose pre-petition, are subject to the Settlement Agreement, and under the Bankruptcy Code, have been discharged by the plan. This defense obviously requires this court to interpret bankruptcy law.

■ Plaintiffs' position that this court has no jurisdiction over this proceeding is premised upon several cases—which essentially hold that a bankruptcy court's jurisdiction is very limited once a plan of reorganization has been confirmed. Although Plaintiffs readily concede that the mere confirmation of a plan does not divest the bankruptcy court of jurisdiction, they assert that disputes and issues that arise post-confirmation do not fall within the jurisdiction of the bankruptcy court.

*Plaintiffs' Memorandum in Support of Motion to Remand ("Plaintiffs' Remand Memo") at 3–4* (citing to *Goodman v. Phillip R. Curtis Enterprises, Inc. (In re Goodman),* 809 F.2d 228, 233 (4th Cir.1987)("*Goodman*"); *Pioneer Inv. Servs. v. Cain Partnership, Ltd., (In re Pioneer Inv. Servs. Co.),* 141 B.R. 635, 640 (Bankr.E.D.Tenn.1992)("*Pioneer*"); *A.R.E. Mfg. Co. v. U.S. (In re A.R.E. Mfg. Co.),* 138 B.R. 996, 998–99 (Bankr.M.D.Fla. 1992)("*ARE*"); *Official Unsecured Creditors' Committee of Erie Hilton Joint Venture v. Siskind (In re Erie Hilton Joint Venture),* 137 B.R. 165, 170 (Bankr. W.D.Pa.1992)("*Erie Hotel*"); *Service Decorating Co. v. Travelers Insurance Co. (In re Service Decorating Co.),* 105 B.R. 859 (N.D.Ill.1989)("*Service*"); and *Central States, Southeast and Southwest Areas Pension Fund v. J.T. Gerken Trucking, Inc. (In re J.T. Gerken Trucking, Inc.),* 10 B.R. 203 (Bankr.N.D.Ohio 1981)("*Gerken*")). In general, these cases support the proposition that the bankruptcy courts retain jurisdiction over the execution or implementation or interpretation of the plan. It is then argued that in this case the confirmed plan is implemented and there is nothing left to interpret.[9]

---

9. The cases cited by Plaintiffs do not support their position under the present circumstances. For example, in *Goodman,* the Fourth Circuit held that the bankruptcy court had jurisdiction over personal injury action, which was not included in the chapter 11 plan. *Goodman,* 809 F.2d at 232–233. It held that the court retained jurisdiction to modify a previously confirmed plan and that the attempted inclusion of the personal injury action was an attempt to modify the plan. *Id.* In this case, it may be argued (although no party raised the argument) that Plaintiffs are attempting to modify their confirmed plan by essentially seeking to amend the plan by seeking more than what was permitted under the terms of the Settlement Agreement. Alternatively, it could have been argued that Plaintiffs are attempting to impermissibly amend the Settlement Agreement. Additionally, in

*Pioneer,* the court held that the bankruptcy court had jurisdiction over the debtor's post-confirmation action filed against creditors to enjoin them from pursuing the creditors' state court action that the debtors alleged interfered with the plan. *Pioneer,* 141 B.R. 635. In *Pioneer,* the debtor similarly alleged that the creditors were enjoined from pursuing the state court action because the debt was discharged by the plan and the creditors' action violated the discharge injunction under §§ 524(a) and 1141(d). *Id.,* 141 B.R. at 642.

The court in *ARE* failed to find jurisdiction involving a post-confirmation suit in which the debtor sought to compel the federal government to award a contract (when the government rejected the debtor's bid because it has previously defaulted on a contract during the bankruptcy proceeding). *ARE,* 138 B.R. 996. The court there correctly held that it did

■ While the court agrees with this general proposition, the mere fact that the plan is implemented does not necessarily mean that there can be no issue to interpret. For example, the interpretation of the plan and the concept of discharge under section 1141 are closely interrelated. Section 1141(d)(1) states, in relevant part, that:

Except as otherwise provided in this subsection, in the plan, or in the order confirming the plan, the confirmation of a plan—

(A) discharges the debtor from any debt that arose before the date of such confirmation....

11 U.S.C. § 1141(d)(1)(A).[10]

Accordingly, Defendants' affirmative defense that the liability from this adversary proceeding has already been discharged calls for interpretation of the plan and application of the bankruptcy laws. Plaintiffs' assertion that "[a]ll events in question occurred after confirmation of the plan" and that "this matter does not require the application of bankruptcy law" is unavailing. *Plaintiffs' Remand Memo* at 4. This is, however, Plaintiffs' legal conclusion.

This very issue is to be decided by this court—which is, whether this action involves "any debt that arose before the date of such confirmation" as that term is used in § 1141(d) of the Bankruptcy Code.

■ In addition, Plaintiffs overlook the ancillary jurisdiction (as discussed previously) that all federal courts possess to enforce and interpret settlement agreements entered before them and approved by them. *See Stokes,* 198 B.R. 168, *HHC3,* 197 B.R. 366. The Settlement Agreement resolved: (1) the disputes between the Defendants and the Plaintiffs in approximately nine adversary proceedings that were pending before this court in the Defendants' bankruptcy as well as (2) the settlement of claims filed in the case by almost all of the Plaintiffs. This was no minor settlement agreement—rather, it was a global settlement agreement intended to resolve all disputes between the Plaintiffs and the Defendants.

■ Another basis for this court's jurisdiction is Plaintiffs' voluntary participation in Defendants' bankruptcy cases. The Settlement Agreement clearly provided for the retention of this court's jurisdiction

not have any jurisdiction over the action because the injunction provision of sections of 524(a) and 1141(d)(1) were not implicated as the creditor was not seeking to collect on any debt. *Id.* at 999. Here, in contrast, Defendants are alleging that Plaintiffs are indeed attempting to collect on a debt they assert has been discharged.

In *Erie Hotel,* the court determined that it had jurisdiction to interpret and enforce the plan after confirmation. *Erie Hotel,* 137 B.R. 165. Similarly, it is Defendants' position that the plan discharges any liability from this adversary proceeding.

The *Service* court is also instructive in that the debtor filed an adversary proceeding to prevent a creditor from setting off a pre-petition debt against a post-petition debt. The court concluded that it had jurisdiction to determine whether the debt was indeed discharged by the debtor's bankruptcy and confirmed plan. *Service,* 105 B.R. 859. As dis-

cussed, this is one of the very issues to be squarely addressed by this court. Finally, in *Gerken,* which was decided under the old Act, the bankruptcy court held that it did not have jurisdiction to rule on a post-confirmation collective bargaining agreement. *Gerken,* 10 B.R. 203. That case is clearly distinguishable in that it involved a contract dispute not directly approved of by the court (but only one of the many contracts adopted by reference in the plan). Here, the Settlement Agreement referenced by Plaintiffs' Original Complaint was specifically entered into during the pendency of Defendants' bankruptcy and approved by this court.

10. Section 524(a) of the Bankruptcy Code in turn contains the provisions of the discharge injunction prohibiting the commencement of any acts to collect on any debt discharged by section 1141.

under the circumstances present here. Plaintiffs cannot complain of these specific provisions they specifically contracted for in the Settlement Agreement. Moreover, almost all of the Plaintiffs filed claims in Defendants' bankruptcy and accordingly, submitted themselves to the jurisdiction of this court.

For all the foregoing reasons, this court finds that it has jurisdiction over this adversary proceeding.

### B. *Settlement, Release and Discharge*

■ Settlement agreements are to be interpreted and governed by the law of contracts. *In re Sure–Snap*, 91 B.R. 178, 180 (Bankr.S.D.Fla.1988). As a threshold matter, this court will have to determine whether the violations complained of by Plaintiffs were "Claims," as that term is defined by the Settlement Agreement. As noted previously, that definition was very broadly worded and encompassed "all such potential assertions in existence on the Closing Date that have not been filed or included in any pending legal proceeding, but *which could have been asserted* ... (emphasis added)." *Settlement Agreement,* ¶ D at 2. Similarly, the Releases contain parallel language, releasing the Defendants from all liability from any causes of action *which could have been asserted* in any of the then existing pending litigation. *Releases,* ¶ 4 at 5.

The very act that Plaintiffs allege as violating the Texas Finance Code in the Third Amended Complaint is the Defendants' method of reporting interest to the IRS on Form 1098. That practice was in existence since 1965 and certainly in existence at the time of Defendants' bankruptcy. In fact, this very court resolved a dispute between the IRS and the Defendants and determined that the method of accounting to the IRS was proper. *HHC2,* 144 B.R. 920. It naturally follows that this was a cause of action which "could have

been asserted" at the time of the Settlement Agreement. Accordingly, this court finds that Plaintiffs' claims are barred by the terms of the Settlement Agreement and the Releases executed by Plaintiffs.

As a related concept, this court further finds that Plaintiffs' claims arose pre-petition. All the acts complained of in the Third Amended Complaint had originated pre-petition and certainly, should have been asserted in Defendants' bankruptcy. *Cf. HHC,* 146 B.R. at 1919–1020 (receipt of monthly installment contractual payments is not a new event for purposes of applying the statute of limitations). Thus, as previously discussed, Bankruptcy Code sections 524 and 1141(d)(1)(A) discharge all pre-petition debts, including any liability, if any, arising from Plaintiffs' Third Amended Complaint.

### C. *Res Judicata*

■ Additionally, the judicial doctrine of *res judicata* precludes Plaintiffs from bringing this suit. The doctrine of res judicata or claim preclusion bars the filing of claims that were raised or could have been raised in an earlier proceeding. Res judicata or claim preclusion applies to an order or judgment when four conditions are satisfied. First, there must be a final judgment on the merits. Second, a court of competent jurisdiction must render the judgment. Third, the parties (or those in privity with the parties) must be identical in both suits. Finally, the same cause of action must be involved in both suits. *Citibank, N.A. v. Data Lease Financial Corp.,* 904 F.2d 1498, 1501 (11th Cir.1990)("*Citibank*"); *In re Justice Oaks II, Ltd.,* 898 F.2d 1544, 1550 (11th Cir. 1990) ("*Justice Oaks*").

As to the first element of a "final order," this court is aware that there is an Eleventh Circuit case holding that a Bankruptcy Court's order authorizing settlement of claims was not "a final decision on the

merits." *Justice Oaks*, 898 F.2d at 1549. This is because a bankruptcy court is only required to determine the probability of success should the claims be litigated, the difficulty of collection and expense of litigation. *Id.* Under the holding of *Justice Oaks*, the order approving the Settlement Agreement is not a "final order" for the purposes of res judicata. However, there is Eleventh Circuit precedent which holds that a stipulation of dismissal of a complaint with prejudice constitutes a "final judgment" sufficient to invoke the doctrine of claim preclusion. *Citibank*, 904 F.2d at 1501–02. Here, Plaintiffs stipulated to dismissals of the adversary proceedings with prejudice. Accordingly, the first element of claim preclusion is met.

As to the second element, there is no dispute that this court's order of dismissal was entered by a court of competent jurisdiction. The third element is also easily satisfied in that the parties are the same.

■■■ As to the fourth element, it is the general rule that "a case arises out of the same nucleus of operative facts, or is based upon the same factual predicate". *Citibank*, 904 F.2d at 1503. The Third Amended Complaint alleges violations of the Texas Finance Code, which essentially was the same basis as their complaints in Plaintiffs' adversary proceedings dismissed by the Settlement Agreement.

Although the dismissed adversary proceedings did not specifically mention Defendants' reporting to the IRS as a basis for their initial complaint, it is clear that the acts complained of arose from the same "nucleus of operative facts." The causes of action complained of in the first round of litigation before this court involved, among other causes of action, violations of the same statute, that is violations

for "time price differentials," as that term is used in the Texas Consumer Credit Code (now called the Texas Finance Code). Clearly, as previously discussed, the same acts complained of in this round of litigation (the reporting to the IRS) occurred when the first round of litigation occurred. The doctrine of res judicata bars litigation of claims that were raised or could have been raised in an earlier proceeding. Thus, this court finds that the doctrine of res judicata bars Defendants' Third Amended Complaint.

### D. *Statute of Limitation*

Defendants argue that Plaintiffs' claims under the Texas Finance Code are barred by the statute of limitations.[11] Section 349.402 of the Texas Finance Code states, in pertinent part:

> An action under this chapter must be brought before the later of:
>
> (1) the fourth anniversary of the date of the loan or retail installment transaction with respect to which the violation occurred; or
>
> (2) the second anniversary of the date on which the violation occurred.

Tex. Finance Code Ann. § 349.492 (Vernons 1998), (preceded by Tex.Rev.Civ. Stat. Ann. Art. 5069–8.04(A)).

■■■ All the original Retail Installment Contracts in this case were executed over either the four or two year limitation periods referenced above. While Plaintiffs argued at one point that the Modification and Extension Agreements signed constituted "new agreements," this argument is without merit. Section 345.072 of the Texas Finance Code states that: "[a]fter amendment, a retail installment contract is the original contract . . ." and section 349.001(7) defines a "retail installment

---

11. Defendants do not concede that Texas law is applicable in this litigation. They argue that the Settlement Agreement binds Plaintiffs to Florida law. Paragraph 24, Settlement Agreement. Because this analysis under Texas law disposes of the issues, the court need not decide whether Florida law is applicable to the substantive allegations.

894

transaction" as the "buyer's purchase of the goods from the retail seller." Under the plain reading of the statute, the date of the transaction refers to the original date of the initial contract.

It is also uncontested that the method of reporting finance charges to the IRS was unchanged from the original date of the contracts. Accordingly, this court concludes that Plaintiffs' suit is untimely and barred by the statute of limitation.

 Texas law is also clear that receipt of monthly installment payments does not constitute a continuing violation. In this very case, this court addressed this identical issue and held that suits brought under the then Texas Consumer Credit Code (now called the Texas Finance Code) against the Defendants by the very same Plaintiffs were barred by the statute of limitations. A new violation does not occur (for purposes of applying the statute of limitations) from each new event connected with the retail installment. *In re Hillsborough Holdings Corp.*, 146 B.R. 1015, 1019–20 (Bankr.M.D.Fla.1992) (citations omitted).

### E. *Violation of the Texas Finance Code*

 Even if this court were to consider the substance of Plaintiffs' complaint, this court finds no violation of the Texas Finance Code. Section 349.001 of the Texas Finance Code provides, in pertinent part:

A person who violates this subtitle by contracting for, *charging,* or receiving interest, time price differential, or other charges greater than the amount authorized by this subtitle is liable to the obligor ... (emphasis added).

Tex. Finance Code Ann. § 349.002 (Vernon 2001).

The issue to be decided is whether Defendants' reporting to the IRS on Forms 1098 constitutes a "charge" under the statute. The definition of a "charge" was discussed by the Texas Supreme Court in the case of *George A. Fuller Co. of Texas, Inc. v. Carpet Services, Inc.*, 823 S.W.2d 603 (Tex.1992) (*"Fuller"*). In *Fuller,* the Texas Supreme Court held that a demand in a pleading for prejudgment interest does not constitute a "charge" for purposes of imposing usurious penalties because the pleading is addressed to the court and only demands that the court grant relief. *Id.* at 605. The court reasoned that:

[a] charge must be communicated to the debtor. The Communications need not be direct, so long as *the charge is ultimately demanded from the debtor* (emphasis added). *Id.*

The court also clarified that a "charge" does not include a "unilateral placing on an account an amount due without any other action." *Id.*

The reporting to the IRS cannot by this definition be a "charge" as the report is not directed to Plaintiffs and does not seek anything from them. Unlike the situation in *Danziger v. San Jacinto Sav. Ass'n,* 732 S.W.2d 300 (Tex.1987), relied upon by Plaintiffs, a payoff quote seeking interest is clearly a "charge" in that the creditor is demanding payment of the higher interest rate. In conclusion, even if this court were to decide the issues raised in the Third Amended Compliant on the merits, Plaintiffs cannot prevail.[12]

### F. *Texas Finance Code and the Applicability to Repossessed House and Real Property*

 Additionally, there is also merit in Defendants' defense that the Texas Fi-

12. It should be noted that at the Hearing, Defendants' attorney proffered that it is Defendants' practice, in the event of a pre-pay-

ment, to properly credit the account i.e. a straight-line accounting method is merely for IRS reporting purposes.

nance Code is inapplicable to those Plaintiffs who purchased a repossessed house and real property.[13] This very court has already ruled on this very issue in this bankruptcy case in *In re Hillsborough Holdings Corp.*, 146 B.R. 1015, 1020 (Bankr.M.D.Fla.1992). Under what was then the Texas Consumer Credit Code, this court held that such purchase did not constitute a retail installment contract under that statute but was instead a purchase of "real property." *Id.* In what appears as an effort to circumvent this holding, Plaintiffs now assert in their Third Amended Complaint that Chapters 301 through 305 of the Texas Finance Code control as to those Plaintiffs.

A similar argument was raised by the plaintiff in *Mid–States Homes, Inc. v. Sullivan*, 592 S.W.2d 29 (Tex.Civ.App.1979)("*Sullivan* "). A repossessed home and land was also at issue in the *Sullivan* case. The Texas Court of Appeals ruled that the financial arrangement for the payment of the property was a "time-price differential" and not an "interest transaction." *Sullivan*, 592 S.W.2d at 29. It reasoned that:

> The financial arrangement for the payment of the property is a "time-price differential" and is not an "interest" transaction. If the negotiations between a buyer and a seller involve a bona fide quotation of both a cash price and a credit price, the transaction does not involve usury, even though the quoted credit price is such as to exceed the cash price plus lawful interest thereon. [citations omitted] Moreover, Article 5069–1.01(a) specifically states that the term interest "shall not include any time differential however denominated arising out of a credit sale."

If the sale contract shows on its face that there is a cash price and a deferred payment price which are revealed to the purchaser at the time of the making of the contract, and that the finance charges are set forth as such, the amount of such finance charges will not be deemed interest, but a time-price differential paid for the privilege of purchasing property to be paid for by the buyer in installments over a period of time. The contract between the parties in the case at bar falls squarely between these guidelines, and the credit price does not constitute usury.

*Id.* at 30–31.

Here the credit sale installment contracts are "time-price differential" contracts because they specifically set forth a cash price and a deferred payment price.[14]

Moreover, the express language of Section 301.002(b) of the Texas Finance Code specifically states: "Time-price differential, regardless of how it is denominated, arising out of a credit sale, is *not* interest." In conclusion, sections 301 and 305 of the Texas Finance Code are inapplicable to these Plaintiffs' contracts involving the purchase of repossessed houses and real property.

### Conclusion

Based upon the foregoing, this court finds that it has jurisdiction over this adversary proceeding. Defendants' motion for summary judgment should be granted with the result that Plaintiffs are prevented from prosecuting this action on various grounds: (1) that any alleged liability arising from the acts complained of in their Third Amended Complaint has been discharged; (2) the settlement and releases bar prosecution of this adversary proceed-

---

13. Such Plaintiffs are referred to as "Category 2 and 4 Plaintiffs" in the Third Amended Complaint.

14. *See* Exhibit 1 to Affidavit of Gary Davis (Doc. No. 133).

ing; (3) the Plaintiffs are barred from prosecuting their complaint by the doctrine of res judicata; (4) the statute of limitations under Texas law bars litigation of this matter; and (5) there is no violation of the Texas Finance Code. Accordingly, it is

ORDERED:

1. The Plaintiffs' Motion to Remand is hereby denied.

2. The Defendants' Motion for Summary Judgment is granted.